# United States District Court
For the Eastern District of Oklahoma

PAT DOBSON and DONNIE DOBSON,   )
                                )
    Plaintiff(s),                )
                                )
vs.                             )   Case No. CIV-06-479-WFD
                                )
CATHEENA DELL ANDERSON, et al., )
                                )
    Defendant(s).                )

### Order Dismissing Plaintiffs' Complaint for Failure to State a Claim for Which Relief can be Granted

This matter comes to the Court on multiple Motions to Dismiss made by various Defendants, two motions for summary judgment made by Plaintiffs and numerous other substantive motions filed by various parties. The Court, having considered the briefs and materials submitted in support of the motion and opposition thereto, and being otherwise fully advised, FINDS and ORDERS as follows:

Plaintiffs originally filed a Complaint against a host of individuals involved in the bail bond business in Wagoner County, Oklahoma. (Complaint 4.) Specifically, Plaintiffs Complaint attempts to put forth a far-reaching Racketeer Influenced and Corrupt Organization Act ("RICO") cause of action. Plaintiffs then filed for summary judgment on February 26, 2007. In response, the Honorable Judge White of the Eastern District of Oklahoma issued an Order denying Plaintiffs' Motion for Summary

Judgment as well a number of protective orders sought by Plaintiffs. In addition, Judge White ordered under penalty of dismissal that Plaintiffs issue a RICO case statement by March 23, 2007, to supplement the "Preliminary RICO Case Statement" provided in the Complaint. (Order 5, Dkt. 15.) As a result, Plaintiffs amended their Complaint to include Judge White as a defendant in their ever-growing RICO suit. (1st Amended Complaint 1.) Without leave to amend, Plaintiffs then amended the Amended Complaint yet again to include a number of other Oklahoma federal judges and state officials. (2nd Amended Comp. 1.) All of Plaintiffs' Complaints as well as the RICO case statement fail to state a claim for which relief can be granted and the case is dismissed.

**Standard of Review**

On a 12(b)(6) motion to dismiss for failure to state a claim, the Court must construe all well-pleaded factual allegations in the light most favorable to the non-moving party. *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006). The federal district court may dismiss a cause of action under Rule 12(b)(6) when it "appears to a certainty that the plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Id.* (Quoting *Gas-A-Car, Inc. v. Am. Petrofina, Inc.*, 484 F.2d 1102, 1107 (10th Cir. 1973)). Judgment on the pleadings should not be granted unless the moving party has demonstrated that no question of material fact remains to be resolved and the party is entitled to judgment as a matter of law. *Park Univ. Enters.*

*v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006).

In this case, Plaintiffs appear before the Court pro se, and the Court complies with its requirement to "liberally construe the allegations of a pro se complaint." *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001). Though the Court adopts and applies a more liberal standard to construe Plaintiffs' pleadings, the Court is not required to adopt the role of advocate for a pro se plaintiff. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Accordingly, "conclusory allegations without supporting factual averments are insufficient to state a claim for which relief can be based." *Id.* Despite the broad and forgiving standard the Court applies to Plaintiffs alleged causes of action, the Court finds that Plaintiffs failed to state a claim and the case is dismissed.

**Analysis**

The Court construes Plaintiffs' Complaint as an attempt to raise causes of action for RICO violations based on fraud. Plaintiffs twice amended their original complaint to add additional defendants. In the original Complaint, Plaintiffs allege that Smith Bail Bond and Woods Bail Bonds "act cohesively as a Racketeer Influence Corrupt Organization from Wagoner County Oklahoma." (Comp. 3.) Plaintiffs then list a number of individuals who they claim are "either predicate actors or parties aiding and abetting the racketeering of Smith and Woods." (Comp. 4.) According to Plaintiffs, Smith and Woods and their cohorts "use any means necessary to monopolize the bail bond business in Wagoner County Oklahoma including criminal process of the County

of Wagoner County and Municipality of Wagoner and Municipality of Coweta." (Comp. 4.) Plaintiffs claim that as a result of the alleged RICO activities, their business has suffered: "The continuing effect of the mafia-style control of the bail bond business in Wagoner County is that Pat and Donnie Dobson rarely receive bail bond calls, or equal access to the jail, denied current inmate information, and denied posting of services provided by Pat Dobson to inmates, all by government and law enforcement officials." (Comp. 7.) Plaintiffs allege that defendants engaged in racketeering through the use of fraud and violence to monopolize the bail bond business in Wagoner County. (Comp. 9.) The two amended complaints appear to be nothing more than a vehicle for Plaintiffs to widen their RICO net and include more federal and state judges and other state law enforcement officials. The amended complaints do not bolster or affect in any way the claims made in the original Complaint.

### A. RICO Claims

To survive a Rule 12(b)(6) motion, a civil RICO claim must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1362 (10th Cir. 1989); 18 U.S.C. § 1962(a),(b), & (c). RICO defines racketeering activity as any act that violates specified state and federal crimes. 18 U.S.C. § 1361; *Bancoklahoma Mort. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1102 (10th Cir. 1999). The underlying acts are referred to as predicate acts because they form the basis for liability under RICO. *Id.* The Court

struggled to determine exactly what predicate acts Plaintiffs alleged. Plaintiffs' RICO Case Statement alleges violations of 18 U.S.C. §§ 513,[1] 1341, 1961, 1962(a),(b),(c) & (d). (RICO Case Statement 1.) Thus, it appears to the Court that the predicate acts include at least mail fraud. It is unclear whether plaintiff alleges other predicate acts. The RICO Case Statement appears to contain a number of general allegations of fraud and other nefarious behavior such as "conveyances of death threats," but the allegations are vague, confusing, and entirely conclusory. Plaintiffs, therefore, failed to satisfy the heightened pleading standard for fraud claims under RICO, and the case must be dismissed.

Federal Rule 9(b)[2] requires predicate acts based on fraud to be pled with specificity to provide clear factual notice of the factual basis for the predicate acts. Fed. R. Civ. P. 9(b); *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007). Actionable fraud includes "(1) a representation; (2) that is false; (3) that is material; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent it be acted on; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's

---

[1] 18 U.S.C. § 513 pertains to counterfeit securities. Section 513 is not listed in 18 U.S.C. § 1961's list of predicate acts. To the extent that allegations of violating this act pertains to some fraudulent act, Plaintiffs' Complaints fail plead fraud with particularity.

[2] Federal 9(b) provides as follows: "In all averments of fraud or mistake, the circumstances constituting fraud of mistake shall be state with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b).

reliance; (8) the hearer's right to rely on it; and (9) injury." *Tal v. Hogan*, 453 F.3d 1244, 1265 (10th Cir. 2006). The plaintiff must adequately allege the nine elements to avoid dismissal. *Id.* Even reading any of Plaintiffs' Complaints and RICO Case Statement as generously as possible, Plaintiffs fail to satisfy the heightened pleading standard for predicate acts based on fraud.

To establish mail fraud, the plaintiff must allege "(1) the existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises, and (2) use of United States mails for the purpose of executing the scheme." *Tal*, 453 F.3d at 1265 (quoting *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.3d 887, 892 (10th Cir. 1991)). A party alleging fraud must include the "time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Id.* (Quoting *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000). The allegations must also identify the purpose of the fraudulent mailing and its relationship to the fraudulent scheme. *Id.* Here, Plaintiffs' Complaints and RICO Statement fail to satisfy these elements. The pleadings and RICO Case Statement make numerous references to the terms fraud and mail fraud, but the pleadings fail to satisfy the heightened pleading standard for fraud. This Court is extremely mindful of its obligation to construe a pro se complaint liberally. But here, the pleadings and RICO case statement do not contain particularized allegations of fraud. Because Plaintiffs failed to plead predicate acts of fraud with particularity, Plaintiffs cannot demonstrate a

pattern of racketeering. Accordingly, Plaintiffs Complaint must be dismissed.

The Court's decision dismisses Plaintiffs' Complaint on Rule 9(b) grounds for failing to plead the predicate acts of the RICO claim with particularity. *See Cayman*, 873 F.2d at 1362 (failure to plead predicate acts for a RICO claim with particularity is grounds for dismissal without reaching whether Plaintiffs sufficiently alleged a pattern of racketeering). The Court, however, does have the discretion to allow Plaintiffs to amend their pleadings if the circumstances warrant an amendment. *Id.* at 1362-63. Here, the circumstances clearly **do not** warrant additional amendment. Judge White provided Plaintiffs with a specific outline and helpful instructions to amend their insufficient RICO statement contained in the original Complaint. (Order 2-6, at Dkt 15.) As a result of Judge White's Order, Plaintiffs amended their Complaint to include Judge White as a Defendant in their RICO claim. Plaintiffs then amended their Complaint a second time without leave to include the majority of the Article III judges, the Attorney General and his assistant attorneys general in Oklahoma. Further, Plaintiffs filed a lengthy, vague, RICO Case Statement containing conclusory allegations attacking their perceived antagonists in the bail bond industry. The Court believes that providing Plaintiffs with another opportunity to amend their defective pleadings will not result in clarity. Rather, providing Plaintiffs with additional opportunity to amend their defective pleadings will undoubtably allow them to ensnare a larger number of individuals in their baseless RICO claim. Meritless pleadings will not serve as a vehicle to intimidate and

harass government officials.

### B. Immunity

In addition to failing to state claim for which relief can be granted, Plaintiffs also bring suit against a number of defendants who possess absolute immunity. The Court is baffled by the allegations made against the federal and state judges in Oklahoma, as well as administrative and law enforcement personnel. Though Plaintiffs bring their complaints against all defendants in their individual capacity, the responsive pleadings indicate that many of the defendants are indeed entitled to immunity. Even if Plaintiffs did in fact state a claim upon which this Court could grant relief, which they did not, the judges, prosecutors, and administrative officials brought into this RICO suit for exercising their official duties are immune from suit.

The doctrine of judicial immunity shields a judge from liability arising from the judge's official adjudicative acts "except where a judge has acted 'in the clear absence of all jurisdiction' . . . ." *Lundahl v. Zimmer*, 296 F.3d 936, 939 (10th Cir. 2002) (quoting *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978); *Guttman v. Khalsa*, 446 F.3d 1027, 1033 (10th Cir. 2006)). A judge will be subject to civil liability only when he has acted in the clear absence of jurisdiction. *Stump*, 435 U.S. at 356. "Judges are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Id.* The judge's jurisdiction will be construed liberally and broadly. *Id.* Further, judicial immunity extends to "any

judicial officer who acts to either resolve disputes between parties or authoritatively adjudicate private rights." *Andrews*, 483 F.3d at 1076 (citing *Lundahl*, 296 F.3d at 1266). Absolute immunity bars suits for money damages for acts made in judicial or prosecutorial discretion. *Id.* at 1076.

Here, Plaintiffs' allegations against the judicial defendants are incoherent and difficult to ascertain. But the Court finds that all allegations made against the judicial defendants, regardless of whether suit was filed against them in their individual capacity, stem originally from the exercise of their judicial responsibilities. As a result, Plaintiffs not only fail to state a claim, but also attempt to recover from individuals who enjoy absolute immunity from civil liability. Defendant Judges White, Seay, and all state judges are all unquestionably acting within adjudicative authority and are privileged to absolute immunity.

Plaintiffs' allegations against the Oklahoma Insurance Commissioner and her employees fails for similar reasons. Defendants Holland, Pennington and Mahoney are entitled to absolute immunity for the role in the prosecution and adjudication of enforcement actions against Bondsman Cooper. Officials in administrative hearings are entitled to judicial immunity if they act in an quasi-judicial capacity. *Guttman v. Khalsa*, 446 F.3d 1027, 1033 (10th Cir. 2006) (citing *Butz v. Economou*, 438 U.S. 478, 514 (1978)). For administrative officials to enjoy judicial immunity, "(a) the officials' functions must be similar to those involved in the judicial process, (b) the officials' actions must be

judicial officer who acts to either resolve disputes between parties or authoritatively adjudicate private rights." *Andrews*, 483 F.3d at 1076 (citing *Lundahl*, 296 F.3d at 1266). Absolute immunity bars suits for money damages for acts made in judicial or prosecutorial discretion. *Id.* at 1076.

Here, Plaintiffs' allegations against the judicial defendants are incoherent and difficult to ascertain. But the Court finds that all allegations made against the judicial defendants, regardless of whether suit was filed against them in their individual capacity, stem originally from the exercise of their judicial responsibilities. As a result, Plaintiffs not only fail to state a claim, but also attempt to recover from individuals who enjoy absolute immunity from civil liability. Defendant Judges White, Seay, and all state judges are all unquestionably acting within adjudicative authority and are privileged to absolute immunity.

Plaintiffs' allegations against the Oklahoma Insurance Commissioner and her employees fails for similar reasons. Defendants Holland, Pennington and Mahoney are entitled to absolute immunity for the role in the prosecution and adjudication of enforcement actions against Bondsman Cooper. Officials in administrative hearings are entitled to judicial immunity if they act in an quasi-judicial capacity. *Guttman v. Khalsa*, 446 F.3d 1027, 1033 (10th Cir. 2006) (citing *Butz v. Economou*, 438 U.S. 478, 514 (1978)). For administrative officials to enjoy judicial immunity, "(a) the officials' functions must be similar to those involved in the judicial process, (b) the officials' actions must be

likely to result in damages lawsuits by disappointed parties, and (c) there must exist sufficient safeguards in the regulatory framework to control unconstitutional conduct." *Guttman*, 446 F.3d at 1033 (quoting *Horwitz v. State Bd. of Med. Examiners*, 822 F.2d 1508, 1513 (10th Cir. 1987)). Here, the aforementioned factors are satisfied. The administrative proceedings at issue were quasi-judicial and governed by Article II of Oklahoma's Administrative Procedures Act. Defendants Pennington and Mahoney were performing a prosecutorial role and Defendant Holland performed a judicial role. Thus, Defendants Mahoney, Pennington, and Holland are entitled to absolute immunity for their role in the prosecution and adjudication of Bondsman Cooper.

The numerous district attorneys listed as defendants are also entitled to absolute immunity. Plaintiffs attempt to allege that Defendants engaged in some sort of fraudulent commission of the bail bond industry. Prosecutors enjoy absolute immunity for activities "intimately associated with the judicial phase of the criminal process . . . ." *Becker v. Kroll*, 494 F.3d 904, 925 (10th Cir. 2007) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). A prosecutor's actions relating to a bail application is a component of the initiation and presentation of a prosecution. See *Lerwill v. Joslin*, 712 F.2d 435 (10th Cir. 1985); *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1149 (2nd Cir. 1995). Thus, to the extent that Plaintiffs allegations arise from the defendants bail related actions, defendants are entitled to absolute immunity.

**C.    Sanctions**

The Court imposes sanctions in the form of limitations on Plaintiffs ability to file additional pleadings in related subject matter. Federal courts have the inherent authority to regulate the activities of abusive litigants by imposing narrowly tailored restrictions in certain circumstances. *Andrews*, 483 F.3d at 1077. The Court may enjoin Plaintiffs from any further filings if the following factors are satisfied: 1) the litigant's lengthy and abusive history is set forth; 2) the Court provides guidelines indicating how the litigants may file an action; and 3) the litigants receive notice and an opportunity to oppose the Court's restrictions before they are imposed. *Id.* As set forth in this Order, Plaintiffs have twice amended their Complaint without leave to include numerous government officials in a meritless RICO claim. First, Plaintiffs amended their Complaint to include Judge White after he issued a well-reasoned opinion that actually instructed Plaintiffs how to amend their defective pleadings. Plaintiffs then amended their Complaint to include the majority of all Article III judges, the Attorney General and Assistant Attorneys General in Oklahoma. Second, the Court restricts Plaintiffs from filing further pleadings that contains the "same or similar allegations as those set forth in his complaint in the case at bar." *Andrews*, 483 F.3d at 1077. Third, Plaintiffs shall have ten (10) days from the date of this Order to file written objections, limited to fifteen (15) pages, to object to these restrictions. If Plaintiffs do not file objections within ten (10) days, the sanctions shall take effect twenty (20) days from the date of this Order. If Plaintiffs do file timely written objections, these sanctions shall not take effect until after

this Court rules on the objections.  *Id.* at 1078.  The Clerk of Court for the Eastern District of Oklahoma is instructed to return any pleadings violating this Court's instructions back to Plaintiffs unfiled.  Though this Court does not impose monetary sanctions at this time, it certainly has the power to do so.  Fed R. Civ. P. 11(b) (pro se litigants must comply with the provisions of Rule 11(b).) *Topeka Housing Auth. v. Johnson*, 404 F.3d 1245, 1248 (10th Cir. 2005) (plaintiff's status as a pro se litigant does not prevent the court from imposing sanctions).  The Court will impose monetary sanctions if Plaintiffs continue to file frivolous pleadings.

**Conclusion**

More than likely, many other individuals named in this lawsuit are also entitled to some kind of immunity, be it qualified or absolute.[3]  The Court, however, finds the pleadings so defective on their face that it is not possible to determine what predicate acts many of the defendants allegedly committed.  Plaintiffs' Complaint and RICO Case Statement failed to plead predicate acts alleging fraud with particularity.  As a result, the RICO allegations made against ALL defendants are dismissed with prejudice.  In addition, the Court has also examined the numerous motions to strike, motions for

---

[3]Specifically, the Court believes that Defendant Assistant Attorney General Metcalfe is likely entitled to judicial immunity.  And the Court agrees with Assistant Attorney General Metcalfe that Plaintiffs likely included him in their amended lawsuit in retaliation for his successful defense in the Stinson litigation.  But this is all conjecture without sufficient foundation in the record.  The allegations against Assistant Attorney General Metcalfe, like so many other Defendants, are too vague and conclusory to determine what the allegations actually entail, much less rule on immunity.

protective orders, and motions for sanctions. Plaintiffs' Motions to Strike are equally as meritless as their Complaint. The Court believes that in the present case, dismissal with prejudice under penalty of sanctions for continued filings effectively and dispositively addresses all outstanding motions.

It is SO ORDERED.

DATED this   17th   day of January, 2008.

*[signature]*
UNITED STATES DISTRICT JUDGE